[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: TERMINATION OF PARENTAL RIGHTS
The above-captioned matter was commenced on January 30, 1995, by the filing of a petition for the termination of the parental rights of Delia M. and David M. The petition was filed by the Department of Children and Families (DCF), hereinafter referred to as the petitioner, acting through its Commissioner. Approximately five days before this petition was filed, the child had been the subject of an order of this court (Doherty, J.) extending her commitment to DCF as an uncared for child. That extension was effective retroactively to December 25, 1994, the date her previous commitment to DCF would have otherwise expired. The petition to extend was filed on December 15, 1995, only 10 days before the expiration date, rather than 90 days before the expiration date as required by statute.
The court has had many concerns about how this case was handled by the Department of Children and Families and its counsel, the Office of the Attorney General. Not the least of CT Page 4737 these concerns is the extensive time this child has been allowed to remain committed to DCF — approximately seven and one-half years — since April 1988. She was returned to the care of her parents in June, 1989, but was returned to DCF custody on an Order of Temporary Custody (OTC) issued on August 11, 1989, (Green, J.), although no finding of probable cause regarding that OTC was found until January 16, 1990, more than five months later. Further, the underlying petition for that commitment was not granted until June 25, 1990, some ten months after that August 1989 OTC was signed. All the while — and ever since — this child was and has been in the custody of DCF and separated from her parents. These facts are of particular concern to the court because two of the grounds cited for termination of parental rights are (1) that there is no ongoing parent-child relationship, and (2) that the child, by acts of commission or omission of the parents, has been denied care and attention necessary for her well being. Having heard the evidence and testimony regarding the aforementioned petition, the court makes the following findings and conclusions.
The trial of this petition was conducted over seven trial dates. The respondent parents each were present throughout the trial and each was represented by counsel. The child was represented by counsel, but did not appear at the trial. The petitioner was represented by the Office of the Attorney General.
As noted above, the child, Athena M. is the daughter of David M. and Delia M.
On April 22, 1988, while not quite six years old, Athena was the victim of a serious beating while spending the night in the home of her two uncles. She was there because her mother was working a night shift and her father, a professional truck driver, was out of state.
DCF obtained from the parents a voluntary permission to place her in foster care and a neglect petition was filed with the court. It was amended to add the allegation that the child was uncared for in that she had special needs which the home could not meet, specifically, emotional and developmental deficiencies. The family was provided with social services and the child was allowed to return home with the proviso that if the family met DCF's requirements for Athena's health and safety, the petition would be withdrawn. CT Page 4738
Not only was the petition as amended not withdrawn, DCF, on August 11, 1989, filed for and received an ex parte OTC (Geen, J.) placing Athena back in DCF custody. On that same day DCF filed an amended petition of neglect. This action was taken after DCF learned that on August 8, 1989, that a 20 year old man had been arrested and charged with Risk of Injury and Attempt to Commit Sexual Assault in the Fourth degree after allegedly touching Athena's private parts while in her apartment in late afternoon. Mother and father were both home, but both were asleep when the incident occurred. Father testified he was suffering from an extremely high fever and was medicated. Mother was asleep as was usual due to her night employment.
As noted, DCF obtained custody of the child on an OTC which was scheduled for hearing on August 21, 1989. The underlying petition was assigned for hearing on September 25, 1989. Probable cause for the OTC was not found until a hearing on January 16, 1990 (Geen, J.).
The neglect petition, which had been amended to an "uncared for — special needs" petition, was granted by agreement of the parents on June 25, 1990 (Mottolese, J.). It is that adjudication which is the basis of the "failure to rehabilitate" allegation against mother and father in the instant petition for termination of parental rights.
The petitioner offered testimony by numerous caseworkers and service providers to the effect that mother and father had been repeatedly advised that Athena had special needs which prevented her from appreciating the boundaries of appropriate behavior. They were cautioned that unless they demonstrated willingness to participate in counseling, there was a chance that Athena would not be allowed to return to their home. Father did not make any appreciable effort to participate in counseling. Mother tried it, but reported that the only benefit she derived from it was the opportunity to vent her feelings. Both parents conceded that they did not feel capable of dealing with Athena's special needs.
Even when a parent aide was made available for home visits, there was little progress in the parents. It got so that mother spent some of the visits asleep or napping on the couch. One visit found no one home and another never got started because the door was not answered. DCF tried to provide the parents with family therapy and individual family and licensed day care for Athena when neither parents could care for her. CT Page 4739
The day before the incident with the 20 year old at the family home, Athena and her mother arrived at the therapist's office accompanied by the same 20 year old who Athena referred to as her "boyfriend". Mother made no attempt to correct Athena or otherwise indicate that he really wasn't the child's boyfriend. The parent aide also had to dissuade the parents from allowing Athena, who was age 7 at the time, to go the movies on a date with this same individual.
While all of the aforementioned events surrounding this adult friend of Athena's are disconcerting, they are tremendously more so in light of the fact that they all occurred at a time when the parents were under extremely critical supervision of DCF and were corroborated by a counselor and a parent aide who were part of the assessment team.
During Athena's placement, the parents were fairly consistent with visitation, but reportedly very resistant to services. They did participate in court ordered evaluation with Dr. Sikich, a child psychiatrist, who also interviewed Athena. Dr. Sikich reported that while the parents expressed love and concern for their daughter, it was apparent that neither of them understood the child's special needs nor could they provide for them at that time or in the future. They refused to accept responsibility for the emotional and behavioral problems exhibited by Athena and denied any abuses on their part which might have contributed to those problems. The somewhat disconcerting fact is that their denials and corresponding refusal to accept behavioral modification is not inconsistent with the attitude and reaction of persons who are telling the truth.
There was considerable testimony offered to the effect that Athena has been able to start to address the many emotional and psychological issues in her life since she has been in placement. More importantly, the testimony indicated that she has been able to recall and discuss in a therapeutic setting, many of the events and incidents to which she was subjected as a small child. She is reported to be in great fear of being reunited with her parents at this point in her life. She has exhibited irrational, violent, and self-destructive behavior after visits with her parents, according to her custodian. The court finds that to return her to her parents in view of their inability to deal with her special needs would not be in her best interest. CT Page 4740
The court finds that in the 17 months preceding the trial, April 1994 to September 1995, no calls, messages, inquiries, cards or gifts were received for Athena from her parents by the sole DCF caseworker who handled the case during that period of time. There were previous attempts by each of the parents to visit, but they could not or would not comply with conditions precedent set by DCF. The court has some concern in this case, as it has in some others, that DCF could arguably be said to have been overly protective of the child and too prohibitive in restricting visitation. In her zeal to oppose early attempts at visitation, Asst. Attorney General Stoloff opined that "the court is deprived of jurisdiction to enter [such] visitation orders, because scheduling visitation is at the discretion of the Commissioner, taking into consideration the facts and circumstances of each case." Not only is that posture incorrect, it permits speculation that lack of visits is not necessarily an indictment of the parents if they come to believe that attempts to visit are futile acts.
These parents did persist in their legal efforts to see their daughter and they continued to take issue with the allegations in the petition right up to testifying at trial. Father gave up his over the road trucking job and they moved away from his brothers. What the court is asked to find is that despite those efforts, they did not, and in all likelihood cannot achieve the degree of personal rehabilitation regarding the special needs of their daughter.
The court is also asked to find that due to the nature and extent of the removal and separation of Athena from her parents' home, for the reasons based upon their inability to provide for her special needs, no parent/child relationship exists as that term is defined by statute. The court finds that both of these grounds for termination of parental rights exist and that each has existed for more than one year.
Failure to Rehabilitate
The court finds that the petitioner has proven by clear and convincing evidence that the parents in the above-captioned matter have failed to achieve such degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child. "Personal rehabilitation" refers to the restoration of a parent to his or CT Page 4741 her former constructive role as a parent. In re Migdalia M.,6 Conn. App. 194, 203 (1986). The court has found that concerns for Athena's safety and welfare go back to 1988. In the interim she was the subject of voluntary placement, restored to her parents, removed again after subsequent events evidencing the parents' lack of understanding or inability to protect Athena from persons and situations which would be harmful and threatening to the average 7 year old, let alone one diagnosed as being "inattentive, distractible, inappropriate and unfocused in her behavior, flighty, manipulative, and in general, starved for love and attention." (State's Ex. 8 ).
The evidence permits the court to find that Athena's commitment as an uncared for child was not solely based upon the inability of the parents to handle a child with certain social and personal deficiencies. As noted by father's counsel, some of the best clinics and special needs foster homes could not handle Athena, either. The important distinction being, however, that the parents created an environment that was replete with hazards and threats to this little girl and they didn't appreciate thatfact, even enough to modify their behavior and protect her from 20 year old men when DCF was not only looking on, but scrutinizing their behavior for just such conduct — having warned them that a failure to protect would result in permanent removal!
Acts of Omission and/or Commission
The court finds that the petitioner has failed to prove by clear and convincing evidence that pursuant to Section 17a-112
(b)(3), C.G.S., the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well being. The principal reason for this finding is the fact that for over 6 years the child has been in the care and custody of the petitioner, and it has not been reasonably possible for the parents to make such provision for their daughter on any meaningful level.
No Ongoing/Parent Child Relationship
The court further finds that there is no ongoing parent/child relationship with respect to the mother and father which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing day to day basis the physical, emotional, moral and educational needs of the child and CT Page 4742 to allow further time for the establishment or re establishment of the parent/child relationship would be detrimental to the best interests of the child.
Sec. 17a-12 (b)(4) "contemplates a situation in which, regardless of fault, a child . . . has definitely lost that [parental/child] relationship, so that despite its former existence, it has now beer completely displaced." In re CandaceD. (July 24, 1995).
The testimony presented permits the court to find that Athena no longer has present memories for her mother and father which would permit or require her to be reunited with them. In fact, the testimony was just the opposite. Any attempt to reunify her with her parents would definitely be detrimental to her emotional and psychological well being.
Disposition
Having found the grounds for termination of parental rights to have been proven by clear and convincing evidence, the court now proceeds to determine the disposition which is in the best interest of the minor child.
The court concludes that this 14 year old girl, who has been in the care and custody of the State of Connecticut since she was approximately 6 years old, cannot be returned to her parents due to the fact that the have exhibited, prior to and during her commitment, the lack of ability not only to deal with the complex social and emotional deficiencies of this girl, but even the lack of ability to recognize her deficiencies so as to provide even minimal assurance that she could be protected from both them and from society in general.
As required by Section 17a-112 (d), the court finds as follows:
(1) that the services offered by DCF to the parents were timely and of sufficient nature and extent so as to facilitate the reunification of the parents and child. The court further finds that they included a parent aide, counseling and other programs designed to address the issues in the home. The court further finds that the services were not effective as mother and father did not make sufficient use of them. CT Page 4743
(2) that DCF made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended. Those efforts included a return of the child to the family home in June 1989, only to have the need for removal evidence itself in August, 1989. Subsequent efforts at reunification were not realistic in view of parents lack of compliance with reasonable expectations set by DCF and court.
(3) as to any existing applicable court orders it is noted that the child has been committed to DCF since June, 1990. Court orders in the form of expectations for reunification were proposed but were not satisfactorily complied with by parents.
(4) the feelings and emotional ties of the child have been considered by the court. Based upon unrefuted evidence and testimony, the child is apprehensive about any proposed reunification with her parents and has expressly indicated that she did not wish to be returned to their care and custody.
(5) at the date of this decree, Athena is one week shy of 14 years old and has been in temporary or foster placement almost continuously since she was approximately six years old.
(6) the efforts of both parents to adjust to his and her circumstances, conduct or conditions to make it in the best interest for the child to return to their home in the foreseeable future has been taken into consideration by this court As set forth hereinabove, the court has found that neither parent has (A) has maintained contact with the child as part of an effort to reunite; and (B) except for DCF, there is not an appropriate custodian or guardian for this child.
(7) neither parent has been prevented from maintaining a relationship with this child by any unreasonable act or conduct of any person or agency. No evidence was presented to permit a finding that either parent has been prevented from maintaining a meaningful relationship with is child due to economic circumstances.
Based upon the evidence and testimony regarding benefits derived by Athena from out of home placement, and considering the testimony that a return to her parents' care and custody would with most certainty expose her to continued risks and inappropriate interpersonal relationships, the court finds that it is in the best interest of the minor child Athena M. that the CT Page 4744 parental rights of her mother, Delia M. and her father, David M., be and hereby are terminated, and that the Commissioner of the Dept. of Children and Families is hereby appointed Statutory Parent in accordance with section 17-112 (1) of the Connecticut General Statutes. DCF is ordered to submit a report in writing within 90 days.
Doherty, J.